United States District Court
Southern District of New York
---------------------------------------------------------x
Darling Capital, LLC, a New York Limited
Liability Company,


v.

Empire Global Corp., a Delaware
Corporation, and Michele Ciavarella,
Canadian resident,

Defendants.
---------------------------------------------------------x

# COMPLAINT

1

Plaintiff, Darling Capital, LLC, a New York Limited Liability Company ("Plaintiff" or "Darling"), by and through its attorneys, for its Complaint herein against Defendants, Empire Global Corp. ("Empire") and Michele Ciavarella ("Ciavarella"), the Chief Executive Officer of Empire, respectfully alleges:

## NATURE OF ACTION

1. This action for money damages arises from Defendants' wrongful actions in breaching Empire's contracts with Darling and in fraudulently inducing Darling to make such loans based on knowingly false statements regarding the existence of a guaranty backed by the Bank of Italy, and that Empire had the ability and intention to make the payments prescribed by the Notes.

2. Plaintiff seeks to recover the $750,000 loaned, plus interest (including default interest), prepayment obligations of 30% of principal balances, attorneys' fees and such other and further relief as the Court deems just.

## THE PARTIES

3. Plaintiff, Darling Capital, LLC, is a New York Limited Liability Company, with its principal offices located at 1553 Union St., Suite #1, Brooklyn, New York 11213.

4. None of the members of Darling is a resident of Delaware or Canada.

5. Darling is informed and believes and based thereon alleges that Defendant, Empire Global Corp., is a Delaware corporation located at 701-130 Adelaide Street, West, Toronto, Ontario Canada M5H2k4.

6. Darling is informed and believes that defendant, Michele Ciavarella, is the Chief Executive Officer of Empire Global Corp, and a resident of Toronto, Ontario Canada.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that the action is between citizens of this state and citizens of a foreign state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated, and because the Convertible Promissory Note dated February 29, 2016 provides for the exclusive jurisdiction of this action in New York, New York at section 4.6. A true and correct copy of that Convertible Promissory Note is attached hereto at **Exhibit 1**. Venue is also mandated in New York, New York at section 5.9 of the Securities Purchase Agreement dated

February 29, 2016, a true and correct copy of which is attached hereto at **Exhibit 2**.

## COMMON ALLEGATIONS

9. Michele Ciavarella, CEO of Empire, solicited an investment of $750,000 in Empire from Darling's representatives in or around December 2015.

10. In connection with that solicitation of Darling's investment, on December 11, 2015, Michele Ciavarella emailed Darling proposing that EMGL would provide "a loan guarantee from a AA or higher rated bank or insurance company or government agency." In a telephone call with the broker, Mr. Ciavarella represented that the guaranty would be an "on-demand guaranty."

11. On December 22, 2015, Michele Ciavarella, CEO of EMGL, sent an email to Darling Capital explaining that "the Banca Italia division that writes the guarantee is the following: www.confidi-union-impresa.com."

12. On January 13, 2016, Mr. Ciavarella sent an email to Darling saying: "we agreed to put up a Bank Guarantee to protect your interests."

13. On January 20, 2016, Michele Ciavarella, CEO of EMGL, sent an email to Darling's representatives saying that "the guarantee certificate will be issued tomorrow morning. … [T]he bank agent Mr. Boccabella (Angelo) is trying to line up a 'higher up' official to join us on the call. We will have myself, Alessandro, Angelo and a bank rep from Confidi." And, on the same date, Mr.

Ciavarella referred to the "Italian banker" who would be on a call regarding the Confidi guaranty.

16. On January 21, 2016, Mr. Ciavarella set up a call with the "banker" at Confidi Union Impresa, who verified the legitimacy of the guaranty.

15. On or around January 22, 2016, Darling signed a Securities Purchase Agreement with Empire reflecting a $750,000 investment by Darling Capital into Empire Global.  Pursuant to the terms of that Securities Purchase Agreement, as amended ("SPA"), Empire Global conveyed to Darling, the following, among other things:

  a. A $600,000 Convertible Promissory Note dated February 29, 2016 ("Note 1"); and

  b. A Guaranty by Confidi Union Impresa (SPA Section 2.2(a)(v) and Recital B(iv) and Exhibit D)(a true and correct copy of the Guaranty is attached hereto at **Exhibit 3**);

16. In addition, Darling loaned the remaining $150,000 on April 4, 2016, for which Empire Global promised to deliver (but has not yet delivered) an identical promissory note in the amount of $150,000 (collectively, the "Notes") and dated April 4, 2016.  An amended Securities Purchase Agreement dated February 29, 2016 was issued by Empire to Darling.  See **Exhibit 2**.

17. The Notes provide, at paragraph 1.2, a 12% interest rate, and payment dates starting three months after the issuance date. Thus, for Note 1, interest was payable May 30, 2016, August 31, 2016 and November 30, 2016. The first interest payment was made on both notes, untimely, on July 14, 2016. No other interest payments have been made. Empire does not dispute that such defaults occurred as to both Notes and that the Notes remain in default as of the date of this Complaint.

18. Paragraph 1.3 of the Notes provides that the Borrower shall not have any grace period and that "during the pendency of an Event of Default (as defined in Article II) a default interest rate of twenty-two percent (22%) per annum shall be in effect." Empire does not dispute that such rate applies from the date of such defaults.

19. Paragraph 2.4 (ii)(i) of the Notes provides that "At any time after 180 days after the issuance of this Note, on any day that the average closing price for Borrower's common stock over the previous 10 trading days, as listed by Bloomberg, is: (i) below $1.30 per share, upon demand by the Holder Borrower shall be required to buy the Note in its entirety at 130% of the Note Obligations."

20. Empire's common stock price was well below such $1.30 per share price at all relevant times, from 10 days before the 180th day after the issuance of each of the Notes, through the date that this Complaint was filed. Plaintiff Darling made demand for the payment of such 130% payment on October 5, 2016.

21. Paragraph 3.1 makes the failure to pay interest an event of default.

22. On October 6, 2016, Empire's counsel confirmed receipt of the default notice dated October 5, 2016, but responded by refusing to pay the amounts due, offering only spurious and unsupported threats and accusations.

23. Due to Empire's breach, Darling engaged Italian counsel and made demand on the guarantor, Confidi Union Impresa, to pay on the guaranteed debt obligations, pursuant to the Guaranty delivered to Darling by Empire upon closing the SPA.  See **Exhibit 3**.  Confidi Union Impressa has refused to pay off, based on alleged breaches by Empire of its contract with such guarantor.  A true and correct copy of the letter asserting such refusal and the unofficial English translation of that letter are attached hereto at **Exhibit 4.**  Darling intends to sue Confidi Union Impressa in Italy pursuant to the venue provisions of that Guaranty.

24. Contrary to Defendants' express representations to Darling, upon which Darling relied in making the loans alleged herein, Darling learned after making the loans and now is informed and believes and based thereon alleges that Confidi Union Impressa is, in fact, a dubious insurance company, included on an Italian government blacklist, and is not backed by the Bank of Italy

## FIRST CLAIM FOR RELIEF

*Breach of Contract*

*(Against Empire Global Corp.)*

25. Plaintiff realleges paragraphs 1 through 24, inclusive.

26. Darling and Empire entered into the SPA on January 22, 2016, a second $750,000 SPA on February 29, 2016, and Empire issued Note 1 in the amount of $600,000 on February 29, 2016.  See **Exhibit 1.**  In addition, Empire promised to issue to Darling a substantially identical second Note on April 4, 2016 in the amount of $150,000.  The Notes were issued in exchange for $600,000 in cash and $150,000 in cash paid by Darling to Empire on or before the date such Notes were issued.

27. Darling performed all of its obligations under both Notes and the SPAs, except as excused.

28. Empire breached the terms of the Notes in at least the following ways:

   a. Failure to pay the first quarterly interest payments timely;

   b. Failure to pay the second quarterly interest payments at all;

   c. Failure to satisfy the 130% debt obligation upon the failure of Empire's common stock price to reach $1.30 per share for ten consecutive trading days for the time period starting ten days

       before the 180th day after the issuance of each of the Notes, and at all times since that date;

    d. Failure to pay any other obligations owed under the Notes; and

    e. Failure to provide a guaranty backed by the Bank of Italy, which would pay upon demand after a default by Empire.

29. Empire's conduct is wrongful, improper and unauthorized.

30. Empire's breach of the Notes has directly and proximately caused Plaintiff substantial damages exceeding $1 million, for which Plaintiff seeks a judgment from the Court.

## SECOND CLAIM FOR RELIEF

*Money Had and Received*

*Against Empire*

31. Plaintiff realleges paragraphs 1 through 30, inclusive.

32. Empire received from Darling $750,000, $600,000 of which on or before February 29, 2016 and $150,000 of which on or before April 4, 2016.

33. Empire has failed and refused to repay those sums to Darling.

34. Under applicable common law claims, including money had and received, Empire is liable to repay to Darling $750,000, plus interest thereon until repaid.

## THIRD CLAIM FOR RELIEF

*Common Law Fraud*

*Against all Defendants*

35. Plaintiff realleges paragraphs 1 through 34, inclusive.

36. Plaintiff is informed and believes that Defendants, Empire and Ciavarella, in making the statements to Darling's representatives alleged herein and in the SPA and Notes, intended to deceive Darling and did deceive Darling in order to secure from Darling the $750,000 of loaned funds by fraud and deception. Among other fraudulent statements, Defendants falsely represented to Darling that the Notes would be paid timely, including interest and principal, and that the Notes would be guaranteed by a bank backed by the Bank of Italy.

37. Plaintiff is informed and believes that, in making such statements, Defendants knew that Empire would not pay the obligations under the Notes and that the Guaranty was not by a company backed by the Bank of Italy and, worse yet, that the Guaranty was contingent upon a side agreement with Empire that the Defendants knew, when they made such promises, Empire had no intention of performing.  In short, while Defendants promised Darling that the Notes would be repaid by Empire and, if not, by a bank backed by the Bank of Italy, in fact they knew that the Notes would not be repaid because Empire intended to default, and, upon default, because the guarantor was not a bank, was not backed by the Bank of

Italy, and that, because Empire intended to breach the contract with the guarantor, that the guarantor would allege that it was excused from performing on its Guaranty.

38. Darling actually and reasonably relied on such false statements in light of the fact that Empire at the time of the statements was a publicly traded and currently reporting company.

39. As a direct and proximate result of defendants' fraudulent misrepresentations to Darling, Darling made the investments set forth herein to its financial detriment.

40. Darling is entitled to compensatory damages and punitive damages against the Defendants, and each of them, jointly and severally, for all damages caused by their fraudulent misrepresentations, according to proof at trial.

Wherefore, Plaintiff, Darling, demands judgment as follows:

A. On the first claim for relief for breach of contract against Empire, monetary damages, including interest and attorneys' fees and costs, of more than $1 million;

B. On the second claim for relief for money had and received against Empire, in an amount to be proven, which Darling expects to exceed $800,000;

C. On the third claim for relief for fraud against all defendants, for money damages and punitive damages according to proof;

D. on all claims for relief, for interest as may be allowed by law; and

E. on all claims for relief, for an award granting such other and further relief as the Court deems just.

Dated: November 17, 2016

CORRIGAN & MORRIS, LLP

By: /s/ Stanley C. Morris

Stanley C. Morris (SM-5814)
Corrigan & Morris LLP
201 Santa Monica Blvd., Suite 475
Santa Monica, CA 90401
(310) 394-2828 Tel.
(310) 394-2825 Fax