UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DARLING CAPITAL LLC, a New York Limited Liability :    Case No.: 16-cv-08943-(PKC)
Company,                                          :

                       Plaintiff,                      :

                       :

       - against -                       :

                       :

NEWGIOCO GROUP, INC., formerly EMPIRE       :
GLOBAL CORP. a Delaware Corporation and MICHELE :
CIAVARELLA, a Canadian Citizen             :

                       :

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

 

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
IT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated: May 16, 2018
       New York, New York

                                LAW OFFICE OF JEFFREY FLEISCHMANN PC
                                By: /s/Jeffrey Fleischmann
                                Jeffrey Fleischmann, Esq.

                                 *Attorneys for Darling Capital LLC*
                                150 Broadway, Suite 900
                                New York, N.Y. 10038
                                Tel. (646) 657-9623
                                Fax (646) 351-0694
                                jf@lawjf.com

Plaintiff Darling Capital, LLC ("Plaintiff" or "Darling"), respectfully submits this memorandum of law support of its motion, granting plaintiff a judgment for its attorney's fees, pursuant to the Settlement Agreement, dated on or about May 15, 2017, and in accordance with the Judgment entered in this action, dated on or about June 30, 2018.

## PRELIMINARY STATEMENT

This application seeks a judgment in the amount of its attorney's fees expended by plaintiff in connection with its enforcement efforts based upon defendant's breach of the Settlement Agreement, dated on or about May 15, 2017 (the "Settlement Agreement") and defendant's refusal to pay the Judgment, dated on or about June 30, 2018 (the "Judgment").  The Settlement Agreement explicitly provides for the recovery of attorney's fees in connection with such enforcement, and the Court explicitly retained jurisdiction in Judgment to enforce the attorney's fees provision. Accordingly, for these reasons, as more fully explained below, plaintiff is entitled to a judgment in the full amount of its enforcement related attorney's fees.

## STATEMENT OF FACTS

The Court is quite familiar with this matter, having presided over an evidentiary hearing relating to plaintiff's application for a post judgment receiver and having granted permission for the filing of this motion.  However, the salient facts are briefly reiterated herein.

On or about May 1, 2018, the parties entered into the Settlement Agreement.  *See* Docket No. 115-1.  The Settlement Agreement provided as follows:

> Attorney's Fees for Future Action: In the event that any party should bring an action or other proceeding against any other party for the enforcement of, or seek a declaration as to, or assert by way of defense, any terms or provision of this Agreement, there shall be an award of reasonable attorney's fees and costs to the prevailing party or parties as the case may be.

> *See Id.* at 6(g).

On June 30, 2017 a judgment in the sum of $1,000,000.00 (the "Judgment") was entered against defendants after they defaulted on the Settlement Agreement. *See* Docket No. 46. The Judgment provides that: "This Court reserves jurisdiction to enforce the terms of the Settlement Agreement and to adjudicate any and all claims and disputes thereunder, including to enforce the attorneys' fee provision in favor of the prevailing party." *Id.* at Par. 3.

Subsequent to the Settlement Agreement and entry of Judgment, plaintiff incurred extensive attorney's fees in connection with its enforcement efforts as the direct result of the Defendants stubborn refusal to abide by the terms of the Settlement Agreement and pay the Judgment. In this action, among other things, on or about July 17, 2017, plaintiff served a post judgment information subpoena upon defendants (the "Subpoena") in accordance with CPLR 5224(a)(3). *See* Docket Entry No. 49-2. Defendants issued a response to the Subpoena whereby they failed to provide proper responses, and instead, purported to claim non-existent privacy rights and non-applicable exemptions which resulted in plaintiff's being forced to make a motion to compel. *See* Docket Entry No. 49-50.  After the Court issued an Order dated September 5, 2017 compelling Judgment Debtors to respond, they provided an amended response which directly contradicted their representation made in their public SEC filings and which claimed, in effect, that they were insolvent[1].

Based upon the responses and conduct of the defendants, plaintiff filed a letter application on September 18, 2017 for leave to file a motion to appoint a receiver, or alternatively, for turnover. *See* Docket Entry No. 53.  On September 20, 2017, the Court granted plaintiff leave to file the

---

[1] Judgment Debtors intransigence continued even with their amended response.  Instead of simply providing responses, Judgement Debtor had their Canadian attorney issue a letter threatening plaintiff of a "regulatory inquiry" unless they "desist" from collection efforts. See Docket 61-1.

receiver motion. *See* Docket Entry No. 54. On September 25, 2017, plaintiff filed a motion to appoint a receiver. *See* Docket Entry No. 60. As the result of defendants counsel withdrawing due to lack of payment, defendant were granted until December 5, 2017 to oppose the receiver motion. *See* Docket Entry No. 65.

Defendants then hired new counsel who appeared in this case on or about November 27, 2017, who immediately requested, and was granted, additional time to submit opposition to the receiver motion. *See* Docket Entry No. 70. However, defendants failed to submit opposition by this deadline either, which resulted in plaintiff filing a letter December 11, 2017 requesting that the receiver motion be granted on default. *See* Docket Entry No. 71. Defendants then moved for an additional extension of time to oppose the receiver motion, and without waiting for permission, simply filed their untimely opposition. *See* Docket Entry. No. 72-73.

After plaintiff filed its reply, the Court set a hearing for January 3, 2018. *See* Docket Entry. No. 76. Defendants once again attempted to delay the matter and filed yet another adjournment request, which plaintiff was forced to oppose, and which the Court denied. *See* Docket Entry No. 78-80.

On January 3, 2018 an evidentiary hearing was held. *See* Minute Entry dated January 3, 2018. At the conclusion of the hearing, the Court directed the parties to conduct an in person settlement conference to attempt to resolve the matter and adjourned the matter to January 23, 2018 for closing arguments. *See* Doc. 83, p. 76. The parties were unable to reach an agreement; however, defendants used this as an opportunity to request yet another adjournment. *See* Docket Entry No. 85-87. On January 29, the day before the adjourned oral argument on the receiver motion, defendants filed an additional "supplement" to the record with respect to the receiver motion, forcing plaintiff to again respond. *See* Docket Entry 88-90. On January 30, 2018, the

Court heard more testimony, arguments, and denied without prejudice the motion for a receiver, and adjourned the proceedings to April 20, 2018. *See* Minute Entry dated January 30, 2018.

The Court made a number of findings in connection with the receiver motion. The Court specifically noted defendants bad faith conduct in the course of rendering a decision, and noted: "So, what I see here at the moment is that in the course of responding to discovery, Newgioco was not forthright, was evasive, did not act in good faith, and made no serious effort to pay the judgment until after the Court's hearing on January 3, 2018, after which it has paid $300,000." *See* Docket Entry 97-1, January 30, 2018 transcript, p. 35.

Following the hearing, plaintiff served additional post judgment discovery requests to which defendant refused to comply with. Instead, defendants filed a motion on February 23, 2018 for "sanctions", to stay discovery and for a protective order. *See* Docket Entry No. 96. Plaintiff was once again forced to oppose this meritless application, which the Court summarily denied, and directed that responses be provided. *See* Docket No. 97 and 100.

But it didn't end there. On April 2, 2018, defendants filed a motion for a "satisfaction of judgment", prior to actually satisfying the Judgment. *See* Docket No. 101. Plaintiff was again forced to file opposition to another unnecessary motion. *See* Docket No. 102.

The Court then issued another Order, dated April 17, 2018, noting that "If, by the time of the hearing on April 20, 2018 at 2 p.m., the money judgment is not fully satisfied by the payment of all sums due and owing to the judgment creditor, the Court anticipates appointing a Receiver. Defendant NewGioco Group, Inc. may wish to consider the advisability of informing its shareholders and others of this eventuality". *See* Docket Entry No. 104.

That same day, defendants moved to adjourn the April 20, 2018 conference, claiming that they could not appear due to "prior commitments". *See* Docket No. 105.   They made this claim

despite the fact that the April 20, 2018 date had been set on January 30, 2018, at the last Court

conference, and that counsel had made no objection when the Court suggested this date.  Once

again, plaintiff was forced to submit opposition.  *See* Docket Entry No. 106.  The Court then issued

an Order that included the following:

> At no time on January 30, 2018 nor in the two months and twenty-one days since
> then, did Mr. MacMull express to this Court that he had a prior commitment on the
> scheduled date. UNDER PAIN OF CONTEMPT JOEL G. MACMULL SHALL
> APPEAR IN PERSON IN COURTROOM 11D, 500 PEARL STREET AT 2 P.M.
> IF THE JUDGMENT DEBTOR HAS PROOF THAT THE JUDGMENT HAS
> BEEN SATISFIED IN FULL, IT SHALL PRESENT SUCH PROOF AT THAT
> TIME AND PLACE.

See Docket Entry No. 107.

Once again, on the eve of the hearing date, defendants filed supplementary materials, this

time, claiming that they had *overpaid* the Judgment.  *See* Docket Entry No. 109-110.  Once again,

plaintiff was forced to respond. See Docket Entry No. 111.

At the hearing on April 20, 2018, defendants proceeded to abandon their claims that they

had overpaid the Judgment.  The Court also gave permission for the filing of this motion in the

event an agreement could not be reached on the attorney's fees and directed that defendants be

provided with copies of the invoices and Declarations setting forth the amounts owed.  The parties

could not reach an agreement.

On May 6, 2018, defendants submitted a proposed order of satisfaction requesting that the

Court issue an Order satisfying aspects of the Judgment that had not been satisfied, including

releasing certain shares from escrow despite the fact that such shares were not to be released per

the Settlement Agreement.  Once again, plaintiff was forced to oppose this application.  *See* Docket

Entry No 114-115.  The Court entered the Order proposed by plaintiff.  *See* Docket Entry No. 116.

Based upon the aforementioned procedural history, it is evident that defendants have no one but themselves to blame for the attorney's fees that had to be expended enforcing the Judgment. Their conduct was overwhelmingly contumacious, in bad faith, and in several instances, Rule 11 worthy.  Given the above, there can be little dispute that plaintiff is entitled to every penny of the attorney's fees expended.

## POINT I.
## THE COURT SHOULD AWARD PLAINTIFF ITS ATTORNEYS FEES

The Settlement Agreement provided as follows:

Attorney's Fees for Future Action: In the event that any party should bring an action or other proceeding against any other party for the enforcement of, or seek a declaration as to, or assert by way of defense, any terms or provision of this Agreement, there shall be an award of reasonable attorney's fees and costs to the prevailing party or parties as the case may be.

*See* Docket No. 115-1 at 6(g).

The Judgment provides that: "This Court reserves jurisdiction to enforce the terms of the Settlement Agreement and to adjudicate any and all claims and disputes thereunder, including to enforce the attorneys' fee provision in favor of the prevailing party." *See* Docket Entry 36 at Par. 3.

 Therefore, plaintiff is entitled to an award against Defendants for costs and expenses incurred in the enforcement of the Judgment, including reasonable legal fees.  *See NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir.2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear"); *Berkley Reg'l Ins. Co. v. Weir Bros.*, 13-CV-3227 (CM) (FM), 2013 WL 6020785, at *13 (S.D.N.Y. Nov.

6, 2013) (finding defendants liable for reimbursement of payments related to "enforcement" of agreement); *St. Paul Mercury Ins. Co. v. M & T Bank Cor*p., 12-CV-6322 (JFK), 2014 WL 641438, at *11 (S.D.N.Y. Feb. 19, 2014) (granting attorney's fees incurred in instant action where Defendant promised to indemnify Plaintiff for expenses incurred as a result of "the enforcement of this [a]greement", and finding that this language "makes 'unmistakably clear' the parties' intention to shift the responsibility for [plaintiff's] ... attorney's fees to [defendant] in the event of the latter's breach")

While defendants were busy avoiding payment of the Judgment in New York, plaintiff was additionally forced to hire counsel in other countries in order to enforce the Judgment. *See* Levin Declaration.  Because defendants reside in Canada, plaintiff engaged counsel in Canada in order to enforce the Judgment. *See* Levin Dec.  Likewise, because many of Defendants assets are located in Europe, plaintiff was forced to hire counsel in Italy in order to enforce the Judgment there. All of these fees were incurred as part of plaintiff's enforcement, and all are therefore recoverable. *See Middleton v Green Cycle Hous., Inc*., 15MC0023, 2017 WL 715747, at *10 [SDNY Feb. 23, 2017] (granting attorney's fees where defendants tactics "necessitated costly research and enforcement measures. For example, Middleton's attorneys were required to research enforcement methods available in foreign jurisdictions, and other questions of federal and procedural law applicable in each such jurisdiction.")

Separate Declarations from each firm hired by plaintiff are annexed as part as this motion, whereby each firm explains their billing rates, the work done, and provides copies of the invoices and billing records.

The firm of BonelliErede was hired to enforce the Judgment in Italy, where many of defendants' assets are located, and per the Declaration of Giulio Ponzanelli, incurred fees of

€27,828.00.  *See Id* and Exhibit 1 thereto for a more detailed description of the firms experience, billing records, and work performed.  This is the equivalent of $32,907.19 based upon the average exchange rate on May 15, 2018.  See Levin Dec ¶ 4 and Exhibit 1 to the Levin Dec. for a copy of a printout showing the exchange rate.

The firm of Corrigan and Morris served as co-counsel in New York and, per the Declaration of Brian Corrigan, incurred post judgment fees of $17, 352.09.  *See Id* and Exhibit 1 thereto for a more detailed description of the firms experience, billing records, and work performed.

The firm of Garfinkle, Biderman was hired to enforce the Judgment in Canada, where defendants reside, and, per the Declaration of David Fenig, incurred post judgment fees of $10,005.09 in Canadian Dollars. This is the equivalent of $7,771.45 in U.S. Dollars based upon the average exchange rate on May 15, 2018. *See* Levin Dec ¶ 6 and Exhibit 1 to the Levin Dec. for a copy of a printout showing the exchange rate. *See* Fenig De*c.* and Exhibit 1 thereto for a more detailed description of the firms experience, billing records, and work performed.

My firm was hired to enforce the Judgment in New York, where I served as co-counsel with Corrigan and Morris.  Per my Declaration, we incurred post judgment fees of $26,682.96. *See Id* and Exhibit 1 thereto for a more detailed description of my experience, billing records, and work performed.

The total amounts owed are summarized as follows:

| Firm | Amount of Invoices | Amount of Invoices In U.S. Dollars[2] | Balance |
|---|---|---|---|
| Corrigan and Morris | $17,352.09 | $17,352.09 | $17,352.09 |
| Garfinkle, Biderman | $10,005.75 (Canadian) | $7,771.45 | $25,123.54 |
| BonelliErede | €27,828.00 (Euros) | $32,907.19 | $58,030.73 |

---

[2] The amounts owed in U.S. Dollars were calculated per the average exchange rate on May 15, 2018.  See Exhibit 1 to the Levin Declaration.

| Law Office of Jeffrey Fleischmann, P.C. | $26,682.96 | $26,682.96 | $84,713.69 |
|---|---|---|---|
| | | | Total: $84,713.69 |

Accordingly, we respectfully request that the Court award plaintiff the sum of $84,713.69 for attorney's fees, and enter judgment accordingly.

"Courts in this Circuit employ a 'presumptively reasonable fee' standard to determine the amount to award as attorneys' fees, which 'boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.' " *Id* at *2. Each of the Declarations and Exhibits to the Declarations set forth the work performed, billing rates, amounts billed, and establish the experience of each attorney seeking fees.  Accordingly, Darling respectfully requests that it be awarded $84,713.69 as and for the attorney's fees and costs incurred.

## **CONCLUSION**

For the foregoing reasons, Darling respectfully requests that the Court award the relief requested.


Dated: May 16, 2018
        New York, New York

                                LAW OFFICE OF JEFFREY FLEISCHMANN PC
                                By: /s/Jeffrey Fleischmann
                                Jeffrey Fleischmann, Esq. (JF-3172)

                                 *Attorneys for Union Capital LLC*
                                 150 Broadway, Suite 900
                                 New York, N.Y. 10038
                                 Tel. (646) 657-9623
                                 Fax (646) 351-0694
                                 jf@lawjf.com